UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Bobby Jefferson, | ) |
| | ) |
|    Plaintiff, | ) Case No.: 1:18-cv-00894 |
| | ) |
| vs. | ) Judge Michael R. Barrett |
| | ) |
| Intelligrated Inc., | ) |
| *dba* Honeywell Intelligrated, | ) |
| | ) |
|    Defendant. | ) |

## OPINION & ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment. (Doc. 15). Plaintiff filed a Response in Opposition[1] (Doc. 24), and Defendant filed a Reply (Doc. 26).

**I.   BACKGROUND**

Plaintiff worked for Defendant from July 2014 to December 2017. (Doc. 18-4 SEALED Bobby Jefferson Depo. PageID 808, 848). Plaintiff is African American. (*Id.* PageID 811).

   **a.  July 2014 – March 2015**

Corey Calla was Plaintiff's direct supervisor throughout Plaintiff's entire employment with Defendant. (Doc. 18-1 SEALED Corey Calla Depo. PageID 312, 324-26). Calla and Alex Herman, Calla's direct supervisor at the time, interviewed Plaintiff. (*Id.* PageID 310); (Doc. 18-4 Jefferson Depo. PageID 864). Calla made the final decision to

---

[1] Plaintiff requests oral argument. (Doc. 24). The Court does not deem oral argument essential to the fair resolution of this matter and denies Plaintiff's request. *See* S.D. Ohio Civ. R. 7.1(b)(2).

hire Plaintiff. (Doc. 18-1 Calla Depo. PageID 326). Calla is white and ten years younger than Plaintiff. (*Id.* PageID 287, 291); (Doc. 18-4 Jefferson Depo. PageID 812).

Plaintiff worked in Defendant's Lifecycle Sales Group as a Lifestyle Sales Engineer. (Doc*.* 18-4 Jefferson Depo. PageID 886, 871). Defendant's Lifecycle Sales Group sells aftermarket products and services—*e.g.*, training plans, technical service agreements, modifications, upgrades, and parts—to Defendant's existing customers for maintenance of their existing automated material handling systems and equipment. (Doc. 18-1 Calla Depo. PageID 344-45); (Doc*.* 18-4 Jefferson Depo. PageID 876-77). Plaintiff's primary responsibilities included calling his assigned customers, visiting his assigned customers at their distribution centers, uncovering sales opportunities, and meeting his sale quotas. (Doc. 18-1 Calla Depo. PageID 300); (Doc*.* 18-4 Jefferson Depo. PageID 875, 910). The Lifecycle Sales Group has two types of direct sales engineers: those assigned to regional accounts and those assigned to national accounts. (Doc. 18-1 Calla Depo. PageID 325-16); (Doc. 18-4 Jefferson Depo. PageID 879). Lifestyle Sales Engineers, whether regional or national, are paid a base salary and can earn sales commissions based commission plans that Defendant enters with each employee. (Doc. 18-1 Calla Depo. PageID 370).

In October 2014, and after Plaintiff's initial training period, he started as a national sales engineer with national accounts. (Doc*.* 18-4 Jefferson Depo. PageID 894, 903). This role required a significant amount of travel, and Plaintiff believed that 75% of his time was to be spent traveling to initially meet and subsequently visit his assigned customers to assess their on-going needs. (*Id.* PageID 914-16). Plaintiff submitted weekly travel expense reports that required Calla's approval. (*Id.*)

### b. April 2015 – December 2015

Plaintiff and Defendant signed a "Customer Service – Compensation Agreement" for 2015. (Doc. 18-1 Calla Depo. PageID 413-14); (Doc. 18-4 Jefferson Depo. Exh. 3 PageID 1015-30).

In April 2015, Calla placed Plaintiff on a Performance Improvement Plan ("PIP"). (Doc. 18-4 Jefferson Depo. PageID 915); (*Id.* Exh. 6 PageID 1040). The column titled "Areas Needing Improvement" lists expense management, account coordination and follow up, Salesforce[2] updates, ownership, and travel approval. (*Id.*) As part of the 2015 PIP, Defendant gave Plaintiff a monthly travel budget of $3,000.00, as Defendant informed Plaintiff that his travel expenses considerably exceeded, often doubling or tripling, those of his peers, and required Plaintiff to inform Calla about any planned travel before booking the travel. (Doc. 18-1 Calla Depo. PageID 427-28); (Doc. 18-4 Jefferson Depo. PageID 914-16). The 2015 PIP lists specific action steps and target dates as "immediate" for Plaintiff to complete those actions steps by. (Doc. 18-4 Jefferson Depo. Exh. 6 PageID 1040).

In October 2015, Calla reassigned a large national account ("Account 1") from Plaintiff's account list and placed Account 1 on Matt McDermott's national accounts list. (Doc. 18-1 Calla Depo. PageID 366, 369, 396, 455); (Doc. 18-4 Jefferson Depo. PageID 926). McDermott is white and younger than Plaintiff. (Doc. 18-4 Jefferson Depo. PageID 927). Calla testified that Patrick McLaughlin requested Plaintiff's removal from the assigned account because the customer was not happy with Plaintiff's performance.

---

[2] Salesforce is a computer program that allows salespeople and their managers to communicate about opportunities so that they can collaborate to move through each step toward a closed sale. (Doc. 15-3 Corey Calla Decl. PageID 204).

3

(Doc. 18-1 Calla Depo. PageID 391). Plaintiff worked with Patrick McLaughlin on Account 1. (Doc. 18-3 SEALED Patrick McLaughlin Depo. PageID 751). More specifically, McLaughlin was an Account Sales Manager for Defendant, not a Lifestyle Sales Engineer, and sold new equipment or products, not aftermarket equipment or products. (*Id.* PageID 760). McLaughlin and Plaintiff were counterparts of sorts in their respective new and aftermarket sales groups. (*Id.*)

Calla completed a 2015 annual performance evaluation for Plaintiff. (Doc. 18-4 Jefferson Depo. PageID 937-38); (*Id.* Exh. 8 PageID 1054-58). Calla's overall rating for Plaintiff was "needs improvement." (*Id.* PageID 1054). In response to this rating, Plaintiff indicated that "[t]here are some aspects of the appraisal I agree with and many others I believe are misconceptions. I will continue to work to overcome the negative perceptions." (*Id.*)

### c. January 2016 – December 2016

Plaintiff and Defendant signed a "Compensation Agreement" for 2016. (Doc. 18-1 Calla Depo. PageID 439); (Doc. 18-4 Jefferson Depo. Exh. 4 PageID 1031-38).

In January 2016, Calla gave Plaintiff a Memo regarding a second PIP and Defendant placed Plaintiff on a second PIP. (Doc. 18-1 Calla Depo. PageID 444-48); (Doc. 18-4 Jefferson Depo. Exh. 7 PageID 1043-44). In the Memo, Call stated, inter alia, that management continues to receive undesirable feedback from the sales organization and Defendant's support group and the common theme of the undesirable feedback revolves around Plaintiff's failure to plan accordingly, take ownership of sales opportunities, and take ownership of customer problems. (*Id.* Exh. 7 PageID 1043). Calla explained that he was removing Plaintiff from the remainder of his national accounts and

4

placing Plaintiff in a regional role such that Plaintiff was now a regional sales engineer. (Doc. 18-4 Jefferson Depo. PageID 933-34); (*Id.* Exh. 7 PageID 1043). Calla stated that this change would allow Plaintiff the opportunity to focus on an account base with minimal disruption from travel and allow Plaintiff to increase his technical and operational knowledge of Defendant's products while in a smaller territory. (*Id.* Exh. 7 PageID 1043). The column titled "Areas Needing Improvement" lists Salesforce updates, sales performance, and ownership and preparation. (*Id.* PageID 1044). The 2016 PIP lists specific action steps and target dates as either "immediate and continuous" or April 1, 2016 for Plaintiff to complete the actions steps by. (*Id.*)

Notwithstanding Calla's transfer of Plaintiff from a national to regional role, Calla approved Plaintiff's request to maintain two of his assigned national accounts, as Plaintiff had projects going with those accounts that Plaintiff wanted to complete, with the condition that Calla support those accounts with Plaintiff. (Doc. 18-1 Calla Depo. PageID 396-94); (Doc. 18-4 Jefferson Depo. PageID 934-35).

Plaintiff received Defendant's IntellaStar Award in 2016. (Doc. 18-1 Calla Depo. PageID 396). Defendant grants this award to salespeople who achieve greater than 100% of their quotas. (*Id.* PageID 395-96).

Calla completed a 2016 annual performance evaluation for Plaintiff. (Doc. 18-1 Calla Depo. PageID 462-64); (Doc. 18-4 Jefferson Depo. PageID 964); (*Id.* Exh. 9 PageID 1059-64). Calla's overall rating for Plaintiff was "needs improvement." (*Id.* PageID 1059-60). In response to this rating, Plaintiff indicated "I agree with some portions of the evaluation and there are portions in which I don't agree." (*Id.*)

5

### d. January 2017 – December 2017

In early 2017, Calla reassigned two accounts from Plaintiff's account list and placed those accounts on Dave Monely's accounts list. (Doc. 18-1 Calla Depo. PageID 399); (Doc. 18-4 Jefferson Depo. PageID 880) (Doc. 18-7 SEALED David Monley Depo. PageID 1304-07). Monley is white and younger than Plaintiff. (Doc. 18-4 Jefferson Depo. PageID 927); (Doc. 18-7 Monley Depo. PageID 1283-84).

In March 2017, Defendant suspended Plaintiff's corporate credit cards due to an unresolved outstanding balance that Plaintiff failed to pay for two months despite repeated requests from Calla and Defendant's Finance Department. (Doc. 15-3 Calla Decl. PageID 205-06); (*Id.* Exh. 3 PageID 224-28). In August 2017, Calla completed a mid-year performance evaluation for Plaintiff. (Doc. 18-1 Calla Depo. PageID 470-71); (Doc. 18-4 Jefferson Depo. PageID 966); (*Id.* Exh. 10 PageID 1065-66).

In early October 2017, Defendant placed Plaintiff on a third PIP. (Doc. 18-1 Calla Depo. PageID 472-73); (Doc. 18-4 Jefferson Depo. PageID 966); (*Id.* Exh. 11 PageID 1067-68). The column titled "Areas Needing Improvement" lists bookings, customer visits, participation and engagement, new opportunity creation, and communication and follow up. (Doc. 18-4 Jefferson Dep. Exh. 11 PageID 1068). The 2017 PIP lists specific action steps and multiple target dates in October 2017 for Plaintiff to complete those actions by. (*Id.*)

Defendant terminated Plaintiff on December 3, 2017. (Doc. 18-4 Jefferson Depo. PageID 984-85). Calla made the final decision to terminate Plaintiff. (Doc. 18-1 Calla Depo. PageID 356). Plaintiff was 51 years old at the time of his termination. (Doc. 18-4 Jefferson Depo. PageID 811).

Defendant hired Austin Hildebrandt into its Lifecycle Sales Group as a Lifestyle Sales Engineer after Plaintiff's termination. (Doc. 18-1 Calla Depo. PageID 406-08). Hildebrandt is white and younger than 40 years old. (*Id.* PageID 413); (Doc. 23-1 SEALED PageID 1392-93) (Defendant's Supplemental Responses to Plaintiff's First Set of Interrogatories).

    e.  **2018 – Present**

Plaintiff received his Dismissal and Notice of Rights from the Equal Employment Opportunity Commission on November 20, 2018. (Doc. 2). His timely Complaint in this matter includes five counts: racial discrimination under federal and state law; age discrimination under federal and state law; and unjust enrichment. (Doc. 1).

## II. <u>ANALYSIS</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if its resolution affects the outcome of the suit. *Id.* On summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint to defeat the motion for summary judgment.

*Anderson*, 477 U.S. at 248-49. Additionally, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

### a. Race and Age Discrimination

Plaintiff argues that Defendant unlawfully discriminated against him based on race and age in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and Chapter 4112 of the Ohio Revised Code. (Doc. 1). Federal caselaw interpreting Title VII and the ADEA is equally applicable to discrimination claims brought under Ohio law. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 469 (6th Cir. 2002) ("In analyzing claims arising under Ohio Rev Code § 4112, Ohio courts have adopted the framework established in federal case law concerning Title VII and the Age Discrimination in Employment [A]ct.") (citing *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Com.*, 66 Ohio St. 2d 192, 196, 421 N.E.2d 128, 131 (1981)). Accordingly, the following analysis under the federal standards applies equally to Plaintiff's claims brought under the respective race and age federal and state anti-discrimination statutes.

In a case involving alleged discrimination on the basis of race or age, a plaintiff can withstand a motion for summary judgment either by presenting direct evidence of discrimination or circumstantial evidence from which a jury may infer a discriminatory motive. *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348 (6th Cir. 1997). Plaintiff does not present direct evidence of race or age discrimination and his claims rely on circumstantial evidence. His claims are thus subject to the *McDonnell Douglas* burden-shifting framework. *See Goetz v. City of Forest Park*, No. 11-CV-270, 2012 WL 4009512, at *6 (S.D. Ohio Sept. 12, 2012); *see generally McDonnell Douglas Corp. v. Green*,

411 U.S. 792 (1973).

*McDonnell Douglas*, as subsequently modified by *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), established a tripartite burden-shifting framework for evaluating discrimination claims in cases where a plaintiff relies on circumstantial evidence. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). First, "the plaintiff bears the initial 'not onerous' burden of establishing a prima facie case of discrimination by a preponderance of the evidence." *Id.* (quoting *Burdine*, 450 U.S. at 253). Second, if a plaintiff can establish a prima facie case, "the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Burdine*, 450 U.S. at 253 (quoting *McDonnell Douglas*, 441 U.S. at 802). Third, if the defendant articulates such a reason, the burden shifts back to the plaintiff to present evidence that the non-discriminatory reason offered by the defendant was merely a pretext for discrimination. *Id.* The Court will consider Plaintiff's race and age claims together at each step under the *McDonnell-Douglas* framework.

### i. Prima Facie Case

It is unlawful for an employer to terminate an employee on the basis of race. 42 U.S.C. § 2000e-2(a)(1); Ohio Rev. Code § 4112.02(A). To establish a prima facie case of racial discrimination under Title VII, a plaintiff must establish that he was (1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and (4) replaced by a person outside of the protected class, or treated differently than similarly situated non-minority employees. *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 303 (6th Cir. 2016). Similarly, it is unlawful for an employer to terminate an employee on the basis of age. 29 U.S.C. § 623(a)(1); Ohio Rev. Code § 4112.14.

9

To establish a prima facie case of age discrimination under the ADEA, a plaintiff must establish that he was (1) a member of a protected class, *i.e.*, was over 40 years old, (2) subject to an adverse employment action, (3) qualified for the position, and (4) replaced by a substantially younger employee, or treated differently than similarly situated, non-protected employees. *Treadway v. California Prod. Corp.*, 659 F. App'x 201, 208 (6th Cir. 2016); *Deleon v. Kalamazoo Cty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014).

Defendant concedes the first three elements: Plaintiff is a member of the relevant protected classes, was subject to an adverse employment action, and was qualified for his position. (Doc. 15 PageID 80-81 n.6). Defendant contends that Plaintiff cannot establish the fourth element for either his race or age claims. (*Id.* PageID 81-82); (Doc. 26 PageID 1443-44).

### 1. Replacement

"A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). "A 'person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.'" *Robinson v. Georgia-Pac. Corrugated, LLC*, No. 1:18-CV-307, 2020 WL 473543, at *4 (S.D. Ohio Jan. 29, 2020) (quoting *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003)). Here, Defendant does not address Plaintiff's argument that there is a question of fact as to whether Defendant replaced Plaintiff with Austin Hildebrand who is white and younger than 40 years old. *Compare* (Doc. 23-1 SEALED PageID 1392-93), *and* (Doc. 24

PageID 1428-29), *with* (Doc. 15), *and* (Doc. 26). The Court construes Defendant's silence as a concession, and finds that there is a genuine issue of material fact as to whether Defendant replaced Plaintiff with Hildebrand. The Court will permit Plaintiff's discrimination claims to proceed under this theory.

### 2. Less Favorable Treatment

To establish that a similarly situated employee in a non-protected class was treated more favorably, a plaintiff must identify "one or more comparators who are similarly situated in all relevant respects." *Robinson*, 2020 WL 473543, at *4 (quoting *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 753 (6th Cir. 2012)).[3] The U.S. Court of Appeals for the Sixth Circuit ("Sixth Circuit") has focused on whether a plaintiff and comparator share the same supervisor, are subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Robinson*, 2020 WL 473543, at *4 (citing *Barry v. Noble Metal Processing, Inc.*, 276 F. App'x 477, 480-81 (6th Cir. 2008)). Here, Defendant's argues that Plaintiff cannot point to similarly situated employees that were not in a protected class and that were treated differently for similar conduct. (Doc. 15 PageID 81-82). Plaintiff fails to identify any potential comparators. (Doc. 24). The Court will not permit Plaintiff's discrimination claims to proceed under this theory.

---

[3] "*Bobo* was abrogated on other grounds by *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 360, [ ] (2013) (holding that Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation standard applicable to status-based Title VII discrimination claims set forth in 42 U.S.C. § 2000e-2(m))." *Jones v. Johnson*, 801 F. App'x 338, 348 (6th Cir. 2020).

### 3. Additional Evidence that Indicates Discriminatory Intent in Light of Common Experience

The lack of a similarly situated comparator is not always fatal to a prima facie case, so long as the plaintiff points to "additional evidence," beyond establishing the first three prima facie elements, that indicates discriminatory intent in light of common experience. *Lindsay v. Yates*, 578 F.3d 407, 417 (6th Cir. 2009); *accord Turner v. McCullough-Hyde Mem'l Hosp.*, No. 1:17-CV-339, 2020 WL 5798392, at *6 (S.D. Ohio Sept. 29, 2020), *aff'd*, No. 20-4159, 2021 WL 3661323 (6th Cir. Aug. 18, 2021); *Edelstein v. Stephens*, No. 1:17-CV-305, 2019 WL 3628824, at *26 (S.D. Ohio Aug. 6, 2019), *report and recommendation adopted*, No. 1:17-CV-305, 2020 WL 1846745 (S.D. Ohio Apr. 13, 2020), *reconsideration denied*, No. 1:17-CV-305, 2021 WL 1168254 (S.D. Ohio Feb. 22, 2021). This "additional evidence" depends upon the particular facts and circumstances of the given case. *Lindsay*, 578 F.3d at 418. For example, in *Lindsay*, a case in which the Sixth Circuit analyzed the *McDonnell Douglas* framework in the housing discrimination context, the Sixth Circuit determined that the suspicious timing of the termination of a purchase agreement, within a few days after the seller discovered the buyers were African American, provided a sufficient evidentiary basis for inferring the seller acted with a racially discriminatory motive. *Id.* at 419-20.

Here, and unlike the Sixth Circuit's decision in *Lindsay*, and the undersigned's decision in *Edelstein*, Plaintiff's argument does not rely entirely on temporal proximity to establish an inference of discrimination. He argues that, based on the specific facts of this case, the following evidence supports a sufficient inference of discriminatory animus: he was generally treated less favorably than his white, younger colleagues and Calla constantly reassigned Plaintiff's accounts to white, younger colleagues. (Doc. 24

PageID 1429-30). Starting with Plaintiff's argument that he was treated less favorably, he explains that he was the only African American sales engineer in the Lifecycle Sales Group for the majority of his tenure at Defendant and he was the only sales engineer subject to travel restrictions or placed on a PIP. (*Id.*) However, Plaintiff does not dispute that, as of April 2015, his travel expenses in his first six months at the company doubled or tripled those of his colleagues or that, in March 2017, the company had to suspend his corporate credit cards due to an unresolved outstanding balance that he failed to pay for two months despite warnings. (Doc. 15-3 Calla Decl. PageID 205-06); (*Id.* Exh. 3 PageID 224-28); (Doc. 18-4 Jefferson Depo. PageID 916); (*Id.* Exh. 6 PageID 1040). The Court is not convinced that these particular facts and circumstances constitute sufficient "additional evidence" to satisfy the fourth element of a prima facie case. *See Lindsay*, 578 F.3d at 418.

Turning to Plaintiff's next argument, Calla testified that, in October 2015, Calla transferred Account 1 from Plaintiff and gave it to McDermott, a younger white colleague, because McLaughlin specifically asked Calla to remove Plaintiff from Account 1 due to Plaintiff's poor performance on the account. (Doc. 18-1 Calla Depo. PageID 368-69, 391). McLaughlin, however, testified that he never requested that Plaintiff be removed from Account 1 and did not know why Calla removed Plaintiff from the account. (Doc. 18-3 McLaughlin Depo. PageID 769). Additionally, although Plaintiff received Defendant's IntellaStar Award for 2016, an award for salespeople who achieve greater than 100% of their quotas, in early 2017, Calla transferred more accounts from Plaintiff and gave them to Monley, a younger white colleague. (Doc. 18-1 Calla Depo. PageID 399); (Doc. 18-4 Jefferson Depo. PageID 880) (Doc. 18-7 Monley Depo. PageID 1304-07). Based on the

facts of this case, which the Court must consider in the light most favorable to Plaintiff at this juncture, the Court finds that Calla's transfer of several of Plaintiff's accounts to younger white colleagues in 2015 and in 2017, before and after the April 2016 PIP that switched Plaintiff from a national to regional sales engineer, is sufficient to permit a reasonable jury to conclude that plaintiff suffered "an adverse . . . action 'under circumstances giving rise to an inference of unlawful discrimination.'" *Lindsay*, 578 F.3d at 416. The Court will permit Plaintiff's discrimination claims to proceed under this theory.

### b. Legitimate, Non-Discriminatory Reason and Pretext

Defendant's offered legitimate, non-discriminatory reason for terminating Plaintiff is Plaintiff's poor performance, specifically the quality and quantity of mistakes, and his failure to take ownership for the mistakes over the course of three years. (Doc. 15 PageID 68, 82-83). Plaintiff does not appear to challenge Defendant's production of this reason. (Doc. 24). The Court finds that Defendant meets its burden of production.

A plaintiff may demonstrate that an employer's proffered legitimate reason for an adverse employment action is pretextual on any of three grounds, by showing that: the reason has no basis in fact; the reason did not actually motivate the termination; or the reason was insufficient to motivate the action. *White*, 533 F.3d at 393. "[T]his three-pronged analysis should not be applied so rigidly as to miss the point; the bottom-line inquiry is whether 'the employer fire[d] the employee for the stated reason or not[.]'" *Robinson*, 2020 WL 473543, at *7 (quoting *Heffernan v. U.S. Bank Nat. Ass'n*, No. 1:13-CV-001, 2014 WL 3408594, at *12 (S.D. Ohio July 10, 2014)).

Plaintiff presents evidence that calls into question the veracity of Defendant's assertion that it fired Plaintiff due to his poor performance. As noted, Calla and

14

McLaughlin present conflicting testimony regarding Plaintiff's alleged poor performance on and need for Plaintiff's removal from Account 1, *i.e.*, the first account that Calla removed Plaintiff from. *Compare* (Doc. 18-1 Calla Depo. PageID 368-69, 391), *with* (Doc. 18-3 McLaughlin Depo. PageID 769). To resolve the conflicting evidence on this issue, credibility determinations must be made, which is beyond the province of the Court on summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Additionally, with the transfer of Account 1 in 2015, the transfer of more of Plaintiff's national accounts in 2016, and still more of his accounts to Monley in 2017, after winning a sales award, Plaintiff presents evidence that Calla continuously reassigned several of Plaintiff's accounts to younger, white colleagues, which appears to have forced Plaintiff to continuously undertake establishing client relationships and a sales pipeline from scratch. A jury could reasonably believe that, in effect, Defendant made it harder for Plaintiff to achieve the sales goals that Defendant set for him by constantly, and without reason, reassigning accounts away from Plaintiff to younger white colleagues and then using Plaintiff's failure to meet those goals as a pretext for his termination. The Court finds that there are issues of fact as to whether Defendant's articulated reason for terminating Plaintiff is pretextual.

Additionally, the Court finds that the same actor inference is not applicable at this stage of the litigation. "[U]nder the 'same-actor inference,' when a plaintiff is terminated by the same person who hired him with knowledge of his membership in a protected class, it is unlikely that discrimination was the reason for the discharge." *Cutcliffe v. Wright State Univ.*, No. 3:17-CV-222, 2019 WL 316909, at *8 (S.D. Ohio Jan. 24, 2019) (citing *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 464 (6th Cir. 1995)). "This general

principle applies regardless of whether the class is age, race, sex, or some other protected classification." *Buhrmaster*, 61 F.3d at 464. Although the factfinder is permitted to draw this inference, the Sixth Circuit has explained that it is by no means a mandatory one, and it may be weakened by other evidence. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 573 (6th Cir. 2003) (citing *Buhrmaster*, 61 F.3d at 464); *see also Gaglioti v. Levin Grp., Inc.*, 508 F. App'x 476, 483 (6th Cir. 2012) (explaining that, "as *Wexler* makes clear, the same-actor inference cannot be an independent reason to grant summary judgment where there are other disputes of material fact").

Moreover, Defendant argues Plaintiff cannot establish that Defendant's legitimate, non-discriminatory reason for terminating him is unworthy of credence, that Defendant was motivated in any way by his race, or that he would not have been terminated "but for" his age. (Doc. 15 PageID 83-84). However, to survive summary judgment, Plaintiff need only produce enough evidence to support a prima facie case and rebut, not disprove, Defendant's proffered rational for his termination. *Griffin v. Finkbeiner*, 689 F.3d 584, 593 (6th Cir. 2012) (quotation marks and citation omitted). Here, Plaintiff has established a prima facie case of race and age discrimination and rebutted Defendant's non-discriminatory justification for his termination. Plaintiff's race and age discrimination claims survive summary judgment and will proceed.

### c. Unjust Enrichment

In Ohio, "[a] claim for unjust enrichment requires the claimant to show that a benefit was conferred upon another party, that the other party knew of the benefit, and that it would be unjust to allow the other party to retain the benefit without paying for it." *Wuliger v. Cannella Response Television, Inc.*, 865 F. Supp. 2d 836, 8445(N.D. Ohio 2011). "Ohio

law does not permit recovery under the theory of unjust enrichment when an express contract covers the same subject." *Tunnell Hill Reclamation, LLC v. Endurance Am., Specialty Ins. Co.*, No. 2:15-CV-2720, 2016 WL 3689100, at *6 (S.D. Ohio July 12, 2016) (quoting *Aultman Hosp. Ass'n v. Community Mut. Ins. Co.*, 544 N.E.2d 920, 924 (Ohio 1989)).

Plaintiff brings his unjust enrichment claim against Defendant for unpaid commission on sales in 2017. (Doc. 24 PageID 1437-38). He argues and testified that he is entitled to commissions on certain deals on certain accounts that Defendant transferred from Plaintiff to Monley in early 2017. (Doc. 18-4 Jefferson Depo. PageID 988-89); (Doc. 24 PageID 1438). Calla testified that he promised to pay Plaintiff commission for business booked on the accounts that he transferred from Plaintiff to Monley in 2017 for a period of six months. (Doc. 18-1 Calla Depo. PageID 397, 399-400). Plaintiff, Calla, and Monley testified that Monley received commissions from accounts that were previously assigned to Plaintiff. (*Id.* PageID 405-06); (Doc. 18-4 Jefferson Depo. PageID 989-990); (Doc. 18-7 Monley Depo. PageID 1284-85, 1314-15, 1330). Those three disagree on the timing of those commissions and whose efforts the booked commissions were based on. (Doc. 18-1 Calla Depo. PageID 405-06); (Doc. 18-4 Jefferson Depo. PageID 989-990); (Doc. 18-7 Monley Depo. PageID 1284-85, 1314-15, 1330).

The record includes compensation agreements between Plaintiff and Defendant for 2015 and 2016. (Doc. 18-4 Jefferson Depo. Exh. 3 PageID 1015-30); (*Id.* Exh. 4 PageID 1031-38). These contracts expressly state that the contract is in effect for the respective listed year and that the contract may be extended only by a written agreement. (*Id.* Exh. 3 PageID 1015); (*Id.* Exh. 4 PageID 1031). The record does not include a

compensation agreement between Plaintiff and Defendant for 2017 or any written agreement extending the 2016 compensation agreement. The Court is not convinced by Defendant's terse argument that the "Incentive Compensation Worksheet" "Incentive Plan Year 2017" is an express contract covering the issue. *See* (*id.* Exh. 5 PageID 1039). Moreover, even if the 2015 and 2016 compensation agreements were to govern, the sections of those agreements that provide the proper payment of an employee's commission upon the employee's termination are incomplete. *Compare* (*id.* Exh. 3 PageID 1019) (Section 7(b)(i)), *with* (*id.* PageID 1017) (Section 1); *compare* (*id.* Exh. 4 PageID 1034) (Section 7(b)(i)), *with* (*id.* PageID 1032) (Section 1). Defendant fails to demonstrate that there is an express contract governing his 2017 commissions. Moreover, the Court declines the party's invitation to weigh the credibility of Plaintiff's, Calla's, and Monley's testimony on this issue. *See Reeves*, 530 U.S. at 150; *compare* (Doc. 15 PageID 87), *and* (Doc. 26 PageID 1450-51), *with* (Doc. 24 PageID 1438). The Court will deny summary judgment as to this claim.

### III. <u>CONCLUSION</u>

In light of the foregoing, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment (Doc. 15) is **DENIED.**[4]

**IT IS SO ORDERED.**  \_/s Michael R. Barrett_____
Michael R. Barrett, Judge
United States District Court

---

[4] The Court will schedule a telephone status conference shortly and, at that conference, the parties should be prepared to discuss the impact of *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 306 (6th Cir. 2016), on this matter's docket. *See, e.g.*, (Doc. 15 PageID 69 n.4).